IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IVAN MARTINEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:23-CV-0877-D |
| | § | |
| JSG ENTERPRISES, LLC and | § | |
| JOHN GARCIA, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

Plaintiff Ivan Martinez ("Martinez") has moved for a default judgment against defendants JSG Enterprises, LLC ("JSG") and John Garcia ("Garcia").

The court has considered the motion, documents filed in support of the motion, and the court's docket in this lawsuit, including the clerk's Fed. R. Civ P. 55(a) entry of default against JSG and Garcia (ECF No. 20), and grants the motion for the reasons set out in these findings of fact and conclusions of law.

The court enters these findings of fact and conclusions of law in support of the default judgment.

JSG failed to timely file any responsive pleading or motion relative to Martinez's original complaint (ECF No. 1) within the deadline provided by Fed. R. Civ. P. 12, although duly and properly served with its summons (ECF No. 6 at 1-2), a copy of Martinez's original complaint (ECF No. 1), and a copy of the order granting Martinez's motion for substitute service in this lawsuit (ECF No. 11) by a person authorized to serve same.

1

JSG is in default, and a default judgment is hereby entered against JSG pursuant to Fed. R. Civ. P. 55(b)(2).

Garcia failed to timely file any responsive pleading or motion relative to Plaintiff's original complaint (ECF No. 1) within the deadline provided by Fed. R. Civ. P. 12, although duly and properly served with his summons (ECF No. 6 at 3-4), a copy of Martinez's original complaint (ECF No. 1), and a copy of the order granting Martinez's motion for substitute service in this lawsuit (ECF No. 11) by a person authorized to serve same.

Garcia is in default, and a default judgment is hereby entered against Garcia pursuant to Fed. R. Civ. P. 55(b)(2).

All facts properly pleaded in Martinez's original complaint relative to JSG and/or Garcia are deemed admitted. Those facts deemed admitted include the following.

1. Martinez's worked for defendants as a fiber splicer from approximately March 2020 to approximately July 2021 and approximately September 2022 to approximately March 2023 ("Plaintiff's work periods").

2. JSG is a domestic limited liability company.

3. JSG is registered with the Texas Secretary of State to conduct business operations in Texas.

4. At all times relevant to this lawsuit, JSG conducted business operations in Texas.

5. During 2020, 2021, 2022, and 2023, JSG was an "enterprise engaged in commerce" as that phrase is used in connection with the FLSA.

6. During 2020, 2021, 2022, and 2023, JSG employed, and continues to employ, two or more employees.

7. During 2020, 2021, 2022, and 2023, JSG employed two or more employees who engaged in commerce and/or who handled, sold, or otherwise worked on goods and/or materials that have been moved in and/or produced for commerce by any person. Examples of such goods and/or materials include vehicles, trailers, generators, fuel, fiber splicing tools, digging tools, personal protection equipment, computers, computer accessories, and phones.

8. On information and belief, JSG has had annual gross sales or business volume in excess of $500,000 during 2020, 2021, 2022, and 2023.

9. The principal place of business of JSG is at 4910 Gordon Smith Drive, Rowlett, Dallas County, Texas 75088.

10. Garcia is a natural person.

11. Garcia is the sole owner, officer, and managing member of JSG.

12. Garcia possessed the power to hire and fire employees of JSG, including Martinez. Garcia hired Martinez.

13. Garcia supervised and controlled work schedules for employees of JSG, including Martinez. Garcia assigned Martinez his work schedule and work assignments.

14. Garcia controlled the conditions of employment for employees of JSG, including Martinez. Garcia was Martinez's direct supervisor who was in charge of assigning Martinez his work schedule for JSG. Garcia assigned Martinez specific work to perform, defendants' customers to perform it for, and the days on which to perform that work.

15. Garcia determined the rate and method of payment for employees of JSG, including Martinez. Garcia set Martinez's method of pay, which was a day rate basis. Garcia set Martinez's rate of pay, which was generally $150 per day. That rate increased to $200 per day near the end of Martinez's work for JSG.

16. Garcia maintained employment records of employees of JSG. Such records include work assignments, work reports, and payroll data.

17. During Martinez's work periods, he performed fiber splicing work for defendants' customers. That work included manual labor installing, repairing, and/or replacing telecommunication fiber optic cables.

18. Defendants paid Martinez's pursuant to a 1099 instead of a W-2. However, under the FLSA, Martinez was an employee of defendants during Martinez's work periods.

19. During Martinez's work periods, Martinez routinely worked more than 40 hours per seven-day workweek for defendants. However, defendants did not pay Martinez time and one-half his regular rate of pay for each and every hour worked over 40 per seven-day workweek. Defendants' failure to pay Martinez time and one-half his regular rate of pay for all hours worked over 40 per seven-day workweek is a violation of the FLSA.

20. Defendants exercised control over when and how Martinez performed his work for Defendants. Defendants assigned Martinez the work he was to perform in a given workday. Defendants instructed Martinez on where he needed to go and what work he needed to perform. Defendants instructed Martinez to report to their shop at 4910 Gordon Smith Drive, Rowlett, Dallas County, Texas 75088 at 7:00 a.m. to begin his workday. From that shop, Martinez generally drove a vehicle and trailer provided by defendants to the respective daily worksite or worksites. It was common for Martinez to work 10 or more hours per day for defendants. Defendants generally required Martinez to work five days per workweek. Martinez typically worked more than 40 hours per seven-day workweek for defendants.

21. Defendants set the method of pay and rate of pay for Martinez relative to the fiber splicing work he performed for defendants. Defendants paid Martinez on a day rate basis.

Defendants generally paid Martinez a day rate of $150.00. Near the end of Martinez's work for defendants, that day rate was increased to $200.00.

22. Defendants controlled all aspects of Martinez's work for defendants so that Martinez was not a separate or independent economic entity. Rather, Martinez's was a part of defendants' workforce relative to their fiber optics installation, repair, and/or replacement business operations. Martinez performed telecommunications fiber splicing work for defendants' customers pursuant to contracts or agreements defendants entered with those customers. Martinez used defendants' vehicle, trailer, splicing machine, digging tools, power tools, generator and other goods and/or materials to perform fiber splicing related work for defendants' customers. Martinez regularly handled, transported, and/or worked on fiber optics telecommunications cables and related goods impacting interstate communications relative to his work for defendants. Martinez did not purchase fiber optics cable and related goods and/or materials relative to his work for defendants.

23. Defendants' investments in their business operation vastly exceeded the investment, if any, by Martinez in defendants' business operation. For example, defendants provided the vehicle driven by Martinez. Defendants provided and/or paid for the fuel and insurance for that vehicle. Defendants also provided the fiber splicing trailer that contained goods and materials needed to perform fiber splicing work for defendants' customers. Those goods and/or materials, which were also paid for and/or provided by defendants, included a splicing machine, digging tools, power tools, and a generator. Defendants negotiated and obtained the contracts for services with their customers and assigned Martinez to perform those services.

24. Martinez did not advertise for or solicit customers relative to his work for defendants, but instead performed work assigned him by defendants. Defendants obtained all

customers relative to the work performed by Martinez in connection with his fiber splicing work for defendants.

25. Defendants controlled all opportunity for profit and loss relative to Martinez's work for defendants. Martinez was paid pursuant to methods and rates set by defendants (day rate of either $150 or $200). Defendants paid for the vehicle and fiber splicing trailer used by Martinez in addition to fuel, insurance, and other required items for that vehicle and/or trailer. Defendants provided the splicing machine, digging tools, power tools, and generator used by Martinez in performing fiber splicing work on behalf of defendants. Defendants provided the shop where Martinez began and ended his workdays for defendants. Vehicles, trailers, and other goods and/or materials needed by Martinez to perform fiber splicing work were located at that shop. Martinez's income relative to his fiber splicing work for defendants did not depend on Martinez's ability to control or determine costs relative to that work. Martinez did not have any opportunity for "profit" or "loss" as an independent economic entity. Instead, Martinez only had the opportunity to earn wages by performing work as is typical in an employer-employee relationship.

26. All initiative for Martinez's work for defendants rested with defendants as they controlled Martinez's daily and weekly work assignments and Martinez did not have to obtain customers to perform that work. Instructions on where and when to perform fiber splicing work for specific customers were provided to Martinez by defendants. Defendants obtained the customers relative to Martinez's work for defendants.

27. As a fiber splicer for JSG, Martinez's services were integral to JSG's business operations. Without fiber splicers, JSG could not render the fiber optics cable related goods and/or services it provided to its customers.

28. Defendants' seven-day workweek during Martinez's employment periods was Monday to Sunday.

29. JSG is and/or was an eligible and covered employer under the FLSA relative to Plaintiff's claims in this lawsuit. 29 U.S.C. § 203(d).

30. In 2020, 2021, 2022, and 2023, JSG was an enterprise engaged in commerce pursuant to the FLSA. 29 U.S.C. § 203(s)(1)(A).

31. Martinez was an employee of JSG pursuant to the FLSA. 29 U.S.C. § 203(e).

32. Martinez was an employee of Garcia pursuant to the FLSA. 29 U.S.C. § 203(e); *Gray*, 673 F.3d at 355-357.

33. JSG and Garcia were joint employers of Martinez relative to the claims in this lawsuit. *Donovan v. Grim Hotel Co.,* 747 F.2d 966, 972 (5th Cir. 1984).

34. Martinez was a covered employee under 29 U.S.C. § 207(a)(1) relative to his claims in this lawsuit.

35. During Martinez's work periods, he routinely worked in excess of 40 hours per seven-day workweek as an employee of defendants. However, defendants did not pay Martinez time and one-half his regular rate of pay for all such hours worked over 40 in each and every seven-day workweek.

36. The failure of defendants to pay Martinez time and one-half his regular rate of pay for each and every hour worked over 40 in all applicable seven-day workweeks is a violation of the FLSA.

37. Defendants' violations of the FLSA are and/or were willful within the meaning of 29 U.S.C. § 255(a). At all material times, defendants were aware that Martinez was not paid time and one-half his regular rate of pay for all hours worked over 40 in each and every seven-day

workweek. Accordingly, defendants knew and/or had reason to believe that Martinez was working overtime hours for which she was not paid all FLSA overtime premium pay owed. Defendants also failed to keep an accurate record of Martinez's daily and weekly hours worked relative to his fiber splicing work for defendants. An employer's "failure to keep accurate or complete records of employment" is evidence of a willful FLSA violation. *Bingham v. Jefferson County, Tex.*, 1:11-CV-48, 2013 WL 1312563, at *14 (E.D. Tex. Mar. 1, 2013), *report and recommendation adopted as modified,* 1:11-CV-48, 2013 WL 1312014 (E.D. Tex. Mar. 27, 2013). *See also, Solano v. Ali Baba Mediterranean Grill, Inc.*, 3:15-CV-0555-G, 2016 WL 808815, at *5 (N.D. Tex. Mar. 2, 2016) (Fish, J.) (same).

The court further finds as fact or concludes as a matter of law the following:

1. The court has subject matter jurisdiction over the federal Fair Labor Standards Act ("FLSA") claims asserted by Martinez in this lawsuit,

2. The court has personal jurisdiction over defendants based on both general and specific jurisdiction.

3. Venue is proper in this court because JSG's principal place of business is located in Dallas County, Texas.

4. JSG was an employer, as that term is used in connection with FLSA, during Martinez's work periods.

5. An employer-employee relationship existed between JSG and Martinez during Martinez's work periods.

6. Garcia was an employer, as that term is used in connection with FLSA, during Martinez's work periods.

7. An employer-employee relationship existed between Garcia and Martinez during Martinez's work periods.

8. JSG and Garcia were joint employers of Martinez relative to his work for defendants during Martinez's work periods.

9. Martinez was a covered employee under 29 U.S.C. § 207(a)(1) relative to his work for defendants during Martinez's work periods.

10. At all times during Martinez's work periods, JSG was an enterprise engaged in commerce as that phrase is defined by the FLSA.

11. Martinez engaged in activities within the coverage of the FLSA relative to his work for defendants during Martinez's work periods.

12. Defendants violated the FLSA's overtime wage provisions as to Martinez, and

13. Defendants owes the damages identified below.

JSG and Garcia owe Martinez, and are jointly and severally liable to Martinez, for the following:

1. Total unpaid overtime wages damages in the amount of $7,840.91.

2. Liquidated damages in the amount of $7,840.91.

3. Post-judgment interest payable according to 28 U.S.C. § 1961 accruing from the date of this Judgment until the Judgment is paid in full by JSG and/or Garcia.

Attorney Allen R. Vaught ("Vaught") of the Vaught Firm, LLC has served as Martinez's counsel at all times relevant to this lawsuit, and Martinez is a prevailing plaintiff in this lawsuit. The court approves—in this context of this default judgment—$500.00 per hour as a reasonable and customary rate for attorney Vaught's legal services within the United States District Court for the Northern District of Texas. Vaught has performed 32.2 hours of legal services representing

Martinez in this lawsuit. The court notes that Vaught has decreased those hours by 20% for billing judgment, resulting in 25.8 hours that Vaught seeks relative to legal fees in the Motion. The court finds that the 25.8 hours of legal services Vaught submits to the court relative to his request for legal fees are both reasonable and necessary relative to his representation of Martinez in this lawsuit. The court finds that none of the *Johnson* factors warrants an increase or decrease to those 25.8 hours. The court also finds that Vaught has incurred costs in the amount of $402.00 for filing fees in representing Martinez in this lawsuit.

JSG and Garcia owe Vaught, and are jointly and severally liable to Vaught, for the following:

1. Reasonable legal fees in the amount of $12,880.00.

2. Taxable costs of court, as calculated by the clerk of court.

3. Post-judgment interest payable according to 28 U.S.C. § 1961 accruing from the date of this Judgment until the Judgment is paid in full by JSG and/or Garcia.

Martinez and Vaught are entitled to all writs and processes in order to collect this Judgment.

Signed October 31, 2023.

                                                  SIDNEY A. FITZWATER
                                                SENIOR JUDGE